# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

CONNIE Y. BURTON, )
)
        Plaintiff, )
)
v. ) Case No. CIV-09-275-D
)
MIDWEST REGIONAL MEDICAL )
  CENTER, LLC, )
)
        Defendant. )

## **O R D E R**

Before the Court is the motion for summary judgment [Doc. No. 22] of Defendant Midwest Regional Medical Center, LLC ("Midwest"). Plaintiff has responded, and Midwest filed a reply.

Background:

Plaintiff, an African American female, asserts claims based on the termination of her employment by Midwest. She contends her termination violated both Title VII of the Civil Rights Act, 42 U. S. C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("§ 1981") because it was motivated by racial discrimination. She also asserts a claim that Midwest violated Oklahoma's Standards for Workplace Drug and Alcohol Testing Act, Okla. Stat. tit. 40 § 551 *et seq.* ( "ODTA"), and a *Burk* claim[1] for wrongful termination in violation of Oklahoma's public policy against racial discrimination.

Midwest argues the evidence establishes Plaintiff cannot prevail on any of these claims. Pursuant to Fed. R. Civ. P. 56, it seeks judgment on each claim. Plaintiff contends that disputed

---

[1]*Burk v. K-Mart Corporation*, 770 P. 2d 24 (Okla. 1989).

material facts preclude summary judgment.

Summary judgment standards:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To dispute a material fact, a plaintiff must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for him. *Id.* The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *MacKenzie v. City & County of Denver*, 414 F. 3d 1266, 1273 (10th Cir. 2005). "[T]he requirement that a dispute be 'genuine' means simply that there must be more than 'some metaphysical doubt as to the material facts.'" *Anderson*, 477 U.S. at 260-261(quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

If the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322. However, a defendant need not disprove the plaintiff's claim; it must only point to "a lack of evidence" on an essential element of that claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d 664, 671 (10th Cir. 1998). The burden then shifts to the plaintiff to go beyond the pleadings and present facts, admissible in evidence, from which a rational trier of fact could find for her; conclusory arguments are insufficient, as the facts must be supported by affidavits, deposition transcripts, or specific exhibits incorporated therein, and it is not the Court's responsibility to attempt to find evidence which could support a plaintiff's position. *Id.* at 671-72.

The record before the Court:

The record submitted by the parties reflects they do not dispute that Plaintiff is African American and that she was employed by Midwest as a Licensed Practical Nurse ("LPN") from October of 2003 until her termination on April 29, 2008. It is also not disputed that, on the morning of March 28, 2008, Plaintiff ingested Hydrocodone pills prior to reporting for work at Midwest; she did so to ease pain in her legs. Plaintiff admits that she did not have a prescription for Hydrocodone for leg pain; however, it had been prescribed by her dentist for pain following a 2005 tooth extraction. Plaintiff also admits she had several bottles of pills in her night stand, including Percocet (Oxycodone), which had been prescribed for her adult daughter in 2007, but for which Plaintiff did not have a prescription.

After taking medication on March 28, Plaintiff reported for work; shortly after arriving, she became extremely dizzy and nauseated, and experienced a decreased level of consciousness. She told the other nurses she needed assistance, and sat on the floor. She was transported to the emergency room in a wheelchair. After her release from the emergency room, she returned to her work station; she continued to feel dizzy and unsteady, and was shaking. Her supervisor instructed her to go to the hospital lab and undergo a drug test; Plaintiff complied. According to the drug test results, Plaintiff tested positive for Percocet (Oxycodone).

At the time of the drug screen, Plaintiff executed an Initial Report of Employee Injury in which she answered affirmatively to a question inquiring if the injury occurred during normal duties. Midwest Ex. 4. As part of the drug screen, Plaintiff also executed a "Non-Regulated Drug Testing Custody and Control Form." A copy of the form is submitted as Midwest Ex. 3. Midwest transmitted the specimen to Compliance Resource Group, Inc.("CRG") Laboratories; a chain of

custody affidavit was executed by the director of the CRG laboratory; he stated the specimen was received on March 31, 2008, and it was then transmitted with tamper evident seals to Medtox Laboratories for testing. Midwest Ex. 9.

Plaintiff testified in her deposition that she believed Hydrocodone was the only drug in her system when the drug screen was performed on March 28, 2008. Plaintiff's dep., Midwest Ex. 2, p. 47, lines 8-16. However, she also testified that she told the Oklahoma Board of Nursing ("OBN") that she took Percocet on that date; she did so in an effort to have her nursing license reinstated. *Id.* at pp. 131-132.

On March 31, 2008, Plaintiff was examined by her primary care physician, Dr. Terri Funches, whose record of that office visit states it was a follow up for emergency room treatment and that Plaintiff reported she "was at work Friday and passed out. Took Percocet and didn't eat." Plaintiff's dep., Midwest Ex. 2, p. 134, lines 4-10.[2]

On April 22, 2008, the Medical Review Officer at CRG Laboratories, Dr. Kevin Lee, contacted Plaintiff and informed her of the positive result of her drug screen. Plaintiff's dep., Midwest Ex. 1, p. 108, lines 19-21. Dr. Lee reported to Midwest that Plaintiff tested positive for Oxycodone, stating he "must verify the screen as positive given that [Plaintiff] did not have an up to date prescription for any current complaint." Dr. Lee note to Rick Baranek of Midwest, Midwest Ex. 5. Plaintiff testified that she told Dr. Lee she had a prescription, that the medication was old, and that she had discarded the medication; Dr. Lee asked her to submit a copy of the prescription. Plaintiff's dep., Midwest Ex.1 , p. 109, lines 1-16. Dr. Lee advised Baranek of Midwest that

---

[2]In her deposition, Plaintiff denied that she told Dr. Funches she had ingested Percocet; however, she could not explain why Dr. Funches included that statement in the record of Plaintiff's office visit. Plaintiff's dep., Midwest Ex. 1, pp. 134-139.

4

Plaintiff had taken the medication from a prescription "from a couple of years ago." Midwest Ex. 5. Midwest suspended Plaintiff on April 22, 2008, pending receipt of a current prescription . Midwest Ex. 8.

Plaintiff does not dispute that Midwest gave her an opportunity to produce a current prescription for the medication which resulted in the positive drug screen result, and she does not dispute that she did not furnish a copy of a current prescription. Plaintiff's dep., Midwest Ex. 2, p. 44, lines 2-5. On April 23, 2008, Plaintiff delivered to Dr. Lee's office a prescription bottle for Hydrocodone, along with a 2005 prescription from her dentist; Dr. Lee was out of the office until the following Monday. Plaintiff's dep., Midwest Ex. 1, p. 110-113. On the following Monday, April 28, Plaintiff telephoned Dr. Lee, who informed her that he had already sent his report to Midwest. *Id.*, pp. 112-113. On April 28, 2008 Midwest terminated Plaintiff's employment.

In her deposition, Plaintiff admitted she did not have a current prescription for Oxycodone at the time of her March 28, 2008 drug screen. Plaintiff's dep., Midwest Ex. 1, p. 52, lines 21-25. She does not dispute that, at the time of her March 28, 2008 drug screen, she did not have a current prescription for Hydrocodone for leg pain; the only Hydrocodone prescription she had was a 2005 prescription from her dentist for pain following a tooth extraction.

Plaintiff does not dispute that Midwest had a written policy prohibiting the use of drugs and alcohol and that she was aware of that policy. The Midwest "Substance Abuse Testing/Drug-Free Workplace Policy" ("Midwest Policy") is submitted as Midwest Ex. 10. Plaintiff does not dispute that Midwest Ex. 10 is a true and correct copy of the policy in effect at the relevant time.

As discussed in more detail, *infra*, the Midwest Policy expressly states that it "is a condition

of employment to refrain from the illegal use of drugs on or off the job," and an "illegal drug" is defined to include "any drug (a) which is not legally obtained; (b) which may be legally obtainable but has not been legally obtained by the employee; or (c) which is being used in a manner or for a purpose other than as prescribed for the employee." Midwest Ex. 10, Part 1. Prohibited Conduct, ¶ A.

According to Midwest, Plaintiff's termination was based on her positive drug test and her admitted ingestion of Hydrocodone, for which she did not furnish a current prescription. Midwest contends the decision to terminate her was consistent with the Midwest Policy prohibiting employee use of illegal drugs. It also contends its policy is consistent with the ODTA.

Plaintiff does not dispute that Midwest stated she was terminated because she violated the Midwest Policy. However, she contends that Midwest's reason for terminating her is a mere pretext for racial discrimination because white employees who violated the Midwest Policy were not terminated. This same allegation forms the basis for her pendent *Burk* tort claim. In addition, she argues that the record shows the Midwest Policy does not comply with the ODTA and that Midwest violated the ODTA by failing to provide her a copy of her drug test results and by failing to uniformly administer the Midwest Policy to all employees.

Application:

Title VII and § 1981 claims:

Plaintiff contends her termination violated both Title VII and § 1981 because it was motivated by unlawful racial discrimination. Pursuant to Title VII, it is unlawful for an employer to discharge any individual because of that individual's "race, color...sex, or national origin." 42 U. S. C. § 2000e-2(a)(1). Section 1981 also prohibits a discriminatory discharge based on race, and

6

the elements required to prove such a claim are the same under Title VII and § 1981. *Carey v. City and County of Denver*, 534 F. 3d 1269, 1273 (10th Cir. 2008).

Plaintiff's Title VII claim of discriminatory termination is governed by the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). *Young v. Dillon Companies*, 468 F. 3d 1243, 1249 (10th Cir. 2006). Her § 1981 claim is also governed by that analysis. *Baca v. Sklar,* 398 F. 3d 1210, 1218 n. 3 (10th Cir. 2005); *Kendrick v. Penske Transportation Services, Inc.*, 220 F. 3d 1220, 1225 (10th Cir. 2000). According to this analysis, Plaintiff must initially establish a *prima facie* case of discrimination based on her protected status; if she presents sufficient evidence, the burden shifts to Midwest to present a justifiable, non-discriminatory reason for its conduct. *Id.* If it does so, then the burden of proof shifts back to Plaintiff, who must show that the proffered justification for Midwest's actions is a mere pretext for unlawful employment discrimination. *McDonnell Douglas*, 411 U.S. at 804.

To establish a Title VII or § 1981 *prima facie* case of discriminatory discharge based on race, Plaintiff must show[3] that (1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the discharge occurred under "circumstances which give rise to an inference of unlawful discrimination."[4] *Plotke v. White*, 405

---

[3]As Plaintiff points out in her response brief, Midwest's brief listed the *prima facie* elements of a claim based on discriminatory failure to hire or promote rather than a claim based on discriminatory termination. In its reply, Midwest focused on the correct elements as well as on Plaintiff's burden of showing pretext. Accordingly, Midwest's incorrect recitation of the elements does not alter the Court's analysis of the claims.

[4]Although the traditional *McDonnell Douglas* formulation provides that the fourth element of a *prima facie* case is that the plaintiff's position remained open after her termination, the Tenth Circuit has held that element is not required where, as in this case, the employer does not argue the employee was terminated because the job was eliminated; "the articulation of a plaintiff's *prima facie* case may well vary, depending on the context of the claim and the nature of the adverse

7

F. 3d 1092, 1099 (10th Cir. 2005); *English v. Colorado Dept. of Corrections,* 248 F. 3d 1002, 1008 (10th Cir. 2001). A plaintiff's *prima facie* burden in a discriminatory discharge claim is described as "light," as "only the most baseless of claims fails to satisfy it." *Zamora v. Elite Logistics, Inc.*, 478 F. 3d 1160, 1171 (10th Cir. 2007).

Similarly, an employer's burden of articulating a legitimate, nondiscriminatory reason for its employment action is "exceedingly light." *Montes v. Vail Clinic, Inc.*, 497 F. 3d 1160, 1173 (10th Cir. 2007). The employer's burden in this regard is one of production only. *Lewis v. D. R. Horton, Inc.*, 375 F. App'x 818, 825 (10th Cir. 2010) (unpublished opinion) (citing *Mickelson v. New York Life Ins. Co.*, 460 F. 3d 1304, 1310 (10th Cir. 2006)). Once the employer proffers a nondiscriminatory justification for the termination, a plaintiff must show "there is a genuine issue of material fact regarding whether the ...justification was pretextual." *Montes*, 497 F. 3d at 1173 (citing *Young v. Dillon Companies, Inc.*, 468 F. 3d 1243, 1249 (10th Cir. 2006)). To show that the proffered reason is a mere pretext for discrimination, a plaintiff must present evidence that the reason is "'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief.'" *Id*. (quoting *Young,* 468 F. 3d at 1249).

In this case, Midwest contends that Plaintiff cannot satisfy her *prima facie* burden because, although she is a member of a protected class, she cannot show she was qualified for her position. To be qualified for the position of LPN at Midwest, Plaintiff was required to have a current Oklahoma nursing license. *See* job description, Midwest Ex.6, p. 3. It is not disputed that Plaintiff's

---

employment action alleged." *Plotke*, 405 F. 3d at 1099 (citing *McDonnell Douglas*, 411 U.S. at 802 n.13). The *prima facie* case was "'never intended to be rigid, mechanized, or ritualistic.'" *Id.* (quoting *Stone v. Autoliv ASP, Inc.*, 210 F. 3d 1132, 1139 (10th Cir. 2000)). Instead, the inquiry is "a flexible one," and requires proof the adverse action occurred "under circumstances which give rise to an inference of unlawful discrimination." *Plotke*, 405 F. 3d at 1099 (citations omitted).

nursing license was suspended by the OBN. Based on that suspension, Midwest argues she cannot show she had the requisite qualifications for the position of LPN.

As Plaintiff points out in her response, however, the evidence shows that she was licensed by the OBN at the time of her April 22, 2008 suspension by Midwest and her April 29, 2008 termination. Plaintiff testified that her license was not suspended by the OBN until February, 2009. Plaintiff's dep., Plaintiff's Ex. 2, p. 25, lines 10-21. Midwest offers no evidence to contest the date on which Plaintiff's license was suspended by the OBN. Accordingly, the undisputed evidence before the Court shows that, at the time of her termination on April 29, 2008, she had a current LPN license. Midwest's argument that she cannot establish she was qualified for the job at the time of her termination must fail.

Midwest agrees Plaintiff can satisfy the remaining elements of her *prima facie* case, as it does not dispute that she is a member of a protected class and that she was terminated. Accordingly, the Court concludes that Plaintiff has satisfied the elements of her *prima facie* case under Title VII and § 1981.

However, the Court also finds that Midwest has satisfied its burden of presenting a justifiable non-discriminatory reason for Plaintiff's termination. It contends, and the evidence reflects, that the proffered reason for Plaintiff's termination is that she tested positive for a prescription medication for which she did not have a current authorized prescription, and such circumstances are grounds for termination under the Midwest Policy. Midwest Ex. 10, ¶ 8, p. 7. According to the undisputed facts, Plaintiff's employment was initially suspended on April 22, 2008; when she did not produce a valid current prescription for the drug for which she tested positive, her employment was terminated in accordance with the Midwest Policy. *Id.*

9

The Midwest Policy expressly states that it "is a condition of employment to refrain from illegal use of drugs on or off the job." Midwest Policy, Ex. 10, ¶ 1, p. 1. It further provides:

> This policy prohibits any employee from bringing onto Midwest...premises or property, having possession of, being under the influence of, possessing in the employee's body, blood, urine or using, consuming, transferring, selling, or attempting to sell or transfer any form of illegal drug while on [Midwest] business or at any time during the hours between the beginning and ending of the employee's work day, whether on duty or not, and whether on [Midwest] property or not.

Midwest Policy, Procedure: Prohibited Conduct, ¶ 1.A, pp. 1-2. The Midwest Policy defines an "illegal drug" as "any drug (a) which is not legally obtained; (b) which may be legally obtainable but has not been legally obtained by the employee; or (c) which is being used in a manner or for a purpose other than as prescribed for the employee." *Id.* at p. 2.

Pursuant to the express terms of the Midwest Policy, an employee may be required to undergo drug and/or alcohol testing if Midwest has a reasonable suspicion that the employee is using or has used drugs in violation of the policy. Midwest Policy, ¶ 2 (B), p. 3. A "reasonable suspicion" is defined as "such circumstances as physical symptoms or manifestations of being under the influence of drugs," including but not limited to "abnormal conduct or erratic behavior." *Id.*

In this case, Plaintiff admits that, on March 28, 2008, she ingested Hydrocodone prior to reporting for work; she admits she did so because she was experiencing leg pain. She also admits that, after reporting for work at Midwest, she experienced dizziness, nausea, and a decreased level of consciousness; she told the other nurses she needed help, and she sat on the floor. These symptoms clearly satisfy the Midwest Policy authorizing an employee drug test, as these constitute abnormal conduct for an LPN reporting to work at a hospital. Plaintiff also admits she did not have a current prescription for Hydrocodone for leg pain; she later told CRG Laboratories that she had a three-year-old Hydrocodone prescription from her dentist for pain resulting from a tooth

extraction.

Under the Midwest Policy, ingestion of a drug which may be legally obtained but is being used in a manner or for a purpose other than as prescribed constitutes ingestion of an illegal drug prohibited by the policy. As set forth in the discussion of the undisputed material facts in the record, Plaintiff has never disputed that she ingested Hydrocodone. There is also evidence in the record that Plaintiff's subsequent drug test revealed the presence of Percocet; she admits that she did not have a prescription for Percocet, although that drug was among several in her night stand, and had been prescribed for her adult daughter. Although she initially denied ingesting Percocet, she testified in a deposition taken by the OBN that she believed she took Percocet which had been prescribed for her adult daughter in 2007. Midwest Ex. 1, p. 77, line 25; p. 78-79. Plaintiff also admits that her ingestion of either Hydrocodone or Percocet without a valid prescription is a violation of the Oklahoma Nursing Practice Act. Plaintiff's dep., Midwest Ex. 1, p. 88, lines 15-24. Because the Midwest Policy provides that ingestion of a drug without a valid prescription is prohibited, whether Plaintiff's drug screen reflected Hyrdocodone or Oxycodone/Percocet does not matter because she admits she had no current prescription for either drug. Plaintiff admitted in her deposition that Midwest's requirement that an employee produce a current prescription for a drug for which she tests positive is a fair requirement. Plaintiff's dep., Midwest Ex. 2, p. 50, lines 9-14.

The Court concludes that the evidence cited by Midwest is more than sufficient to satisfy its burden of articulating a justifiable, nondiscriminatory reason for Plaintiff's termination. Accordingly, the burden shifts to Plaintiff to show that the proffered reason is a mere pretext for discrimination; to avoid summary judgment at this stage, Plaintiff must present sufficient evidence to create a genuine factual dispute regarding pretext. *See Montes*, 497 F. 3d at 1173.

To do so, Plaintiff must present evidence showing Midwest's reasons for her termination are so "incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief." *Young*, 468 F. 3d at 1249. Plaintiff contends there is sufficient evidence to create a genuine dispute regarding pretext because the evidence shows similarly situated white employees who tested positive for illegal drugs were not terminated. As Plaintiff points out, evidence of pretext may be based on an employer's failure to uniformly apply its disciplinary policies. *Cone v. Longmont Hospital Ass'n*, 14 F. 3d 526, 532 (10th Cir. 1994). It is a plaintiff's burden to present evidence from which it can be inferred that differences in treatment of employees were motivated by an illegal discriminatory intent. *E.E.O.C. vs. Flasher Co., Inc.*, 986 F. 2d 1312, 1321 (10th Cir. 1992).

Plaintiff's evidence of pretext is limited to a portion of the deposition testimony of Midwest's Human Resources Director, Richard Baranek, and her own deposition testimony.

Plaintiff contends that Baranek's testimony is sufficient to preclude summary judgment because he admitted approximately five employees who tested positive for drugs were not terminated by Midwest; he could recall only two of those employees, and testified that both were white. Baranek dep., Plaintiff's Ex. 1, p. 34-37. As Midwest points out, however, Baranek's statement was in the context of his response to questions about the Midwest Policy provisions regarding employees who had participated in drug or alcohol rehabilitation programs. In his deposition, he was asked if any Midwest employees who tested positive for drugs were allowed to participate in rehabilitation. *Id.*, p. 34, lines 15-24. He testified that he recalled approximately five incidents in which an employee's drug test was positive; he could recall the identity of only one employee, Rick Scott, a white nurse who tested positive for alcohol. Baranek dep., p. 35-36.

12

According to Baranek, Scott's supervisor reported Scott had attendance problems; when Baranek met with him to discuss his attendance, Scott admitted he had an alcohol abuse problem and needed assistance. After completing a rehabilitation program, he returned to work at Midwest. *Id.* at 36.

Baranek also testified that he could recall one other employee, a white nurse, who tested positive for drugs and participated in rehabilitation. Baranek dep., p. 37, lines 3-24. He could not recall the names or races of the other three employees who participated in rehabilitation. *Id.*, p. 37, lines 1-3.

The Court agrees with Midwest that Baranek's testimony does not support Plaintiff's claim that she was subjected to discrimination because she was terminated and some white employees were allowed to remain employed. Baranek testified about the Midwest Policy provision allowing employees to participate in rehabilitation. That policy expressly provides that employees are encouraged to seek counseling and rehabilitation for drug or alcohol problems. Midwest Policy, Midwest Ex. 10, ¶ 7, pp. 6-7. It also expressly states that Midwest "may suspend the imposition of disciplinary action subject to an employee's successful participation and completion in an alcohol or drug dependency treatment or rehabilitation program, but such suspension of disciplinary action shall be in the sole discretion of Midwest." *Id.* at p. 7. Significantly, the Midwest Policy does not require Midwest to direct employees to participate in rehabilitation, nor does it guarantee that all employees will be permitted to enter a rehabilitation program. Plaintiff cites no provision of the Midwest Policy which could arguably impose such requirements, and the Court finds the policy does not require Midwest to permit employees to participate in rehabilitation in lieu of termination. Furthermore, Baranek testified that employees who test positive and "come forth and tell us they

13

have a problem" are directed to a rehabilitation program. Baranek dep., p. 34, lines 11-14.

In this case, Plaintiff does not contend that she admitted to Midwest that she had a drug dependency problem; nor does she contend she requested an opportunity to participate in rehabilitation. There is no evidence before the Court to support such an argument. That other employees, regardless of their race, admitted drug dependency problems and requested an opportunity to enroll in a rehabilitation program does not support Plaintiff's claim that she was subjected to racial discrimination because her employment was terminated after she violated the Midwest Policy.

The only other evidence cited by Plaintiff to support this contention is her testimony that she "heard" that white nurses who tested positive for drugs were not terminated. She also testified that she believed a white employee, Linda Fraser, was allowed to work while impaired and another white nurse who tested positive for drugs, Robyn Kellington, was not terminated.[5] Plaintiff's dep., Plaintiff Ex. 2, pp. 68-69, 168, 171. The foregoing evidence is insufficient to create a genuine factual dispute because hearsay testimony that would not be admissible at trial is not sufficient to defeat a motion for summary judgment. *Aguiar v. Bartlesville Care Center*, 2011 WL 263204, at *6 n. 1 (10th Cir. Jan. 28, 2011) (unpublished opinion) (citing *Adams v. American Guarantee and Liability Ins. Co.*, 233 F. 3d 1242, 1246 (10th Cir. 2000)).

During discovery in this case, Plaintiff deposed both Linda Fraser and Robyn Kellington; both were asked whether they had undergone drug testing while employed at Midwest, and both

---

[5] In her deposition, Plaintiff also identified another white nurse, Natalie Griffin, who tested positive for a drug and was not terminated; however, Plaintiff also testified that Ms. Griffin told Plaintiff she had a prescription for the drug for which she tested positive. Plaintiff's dep., Midwest Ex. 2, p. 50.

14

declined to respond on the grounds that their medical records are confidential. *See* Linda Fraser dep., Plaintiff's Ex. 3, p. 18, lines 16-25; p. 22, lines 3-7; Robyn Kellington dep., Plaintiff's Ex. 4, p. 9, lines 7-13. Plaintiff believes the employee drug test records maintained by Midwest support her contention that white employees testing positive were not terminated. However, she notes that Midwest resisted her discovery request for copies of employee drug test information, and Plaintiff filed a motion to compel the production of that information.

The Court scheduled a November 30, 2010 hearing on Plaintiff's motion to compel, but directed the parties to first confer and attempt to resolve the discovery dispute. On November 30, the parties advised the Court that they had resolved the dispute. On December 7, 2010, the Court entered an Order [Doc. No. 43] reflecting the parties' agreement regarding the production by Midwest of certain employee drug test records, subject to confidentiality requirements as set forth in the Order. Accordingly, Plaintiff should have received the records which she believes support her argument shortly after December 7, 2010.

Although the December 7 Order was filed after briefing on the summary judgment motion was completed, Plaintiff has not sought leave to submit evidence supporting her contention that Midwest's employee drug test records support her claim that similarly situated white employees were not terminated after testing positive for drugs.[6] Plaintiff bears the burden of presenting evidence sufficient to create a genuine factual dispute that Midwest's reason for terminating her is a mere pretext.

---

[6]Although Plaintiff's request to file a sur-reply brief was denied by the Court, her request was filed on November 22, 2010, prior to the production of the documents at issue; furthermore, her request to file a sur-reply did not reference her pending request for Midwest's employee drug test records, nor did she seek to present additional evidence.

The Court concludes that the admissible evidence on which Plaintiff relies to present a genuine dispute regarding pretext is inadequate to exceed "more than a mere scintilla," as is required to avoid summary judgment. *Anderson*, 477 U.S. at 247-48. Plaintiff has failed to present admissible evidence sufficient to enable a reasonable jury to find in her favor on the issue of pretext. Accordingly, Midwest is entitled to summary judgment on Plaintiff's claims of discriminatory termination in violation of Title VII and § 1981.

This Court's jurisdiction is based on the existence of a federal question resulting from claims arising under Title VII and § 1981 and is conferred pursuant to 28 U. S. C. § 1331. Plaintiff's *Burk* claim and ODTA claim are state law claims for which jurisdiction is pendent to the federal statutory claims.

Having disposed of the only federal claims asserted in this lawsuit, the Court, in the exercise of its discretion pursuant to 28 U. S. C. § 1367(c), concludes that the pendent state claims should be dismissed without prejudice to their filing in a proper state forum. *Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F. 3d 1245, 1264 n. 18 (10th Cir. 2003); *Bauchman ex rel. Bauchman v. West High School,* 132 F. 3d 542, 549 (10th Cir. 1997) (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988) (where federal claims are adjudicated prior to trial, "the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.")). In this case, the Court finds this result particularly appropriate given the nature of the remaining claims asserted. Plaintiff's *Burk* claim is based on the Oklahoma court interpretations of the public policy tort; the scope of the *Burk* tort has been the frequent subject of questions certified to the Oklahoma Supreme Court by the federal courts. *See, e.g., Shirazi*, 204 P. 3d at 76; *Kruchowki,* 202 P. 3d at 145. Furthermore, Plaintiff's ODTA claim involves the interpretation and application of an Oklahoma

16

statute which has been addressed by the state courts in very few reported decisions. Those decisions reflect that the Oklahoma courts have not directly defined the elements of a cause of action based on the ODTA provisions which Plaintiff claims were violated, nor have the Oklahoma courts addressed the standing issue raised by Midwest. Given the lack of authority interpreting the ODTA provisions in this context, the Court finds the Oklahoma courts are best equipped to interpret and apply the ODTA to the claims and defenses raised in this lawsuit.

Conclusion:

For the foregoing reasons, Midwest's motion for summary judgment [Doc. No. 22] is GRANTED as to Plaintiff's claims arising under Title VII and § 1981. The remaining state law claims are dismissed without prejudice to their refiling in a proper state forum.

IT IS SO ORDERED this 31st day of March, 2011.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE